JTW: 09.28.23



ORIGINAL

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| John W. Sippel, Jr.<br>*Assistant United States Attorney*<br>John.Sippel@usdoj.gov | Suite 400<br>36 S. Charles Street<br>Baltimore, MD 21201-3119 | DIRECT: 410-209-4807<br>MAIN: 410-209-4800<br>FAX: 410-962-3124 |

September 28, 2023

Howard L. Cardin, Esquire
309 Allegheny Avenue
Towson, Maryland 21204

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

1:19 pm, Sep 29 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

Re:   *United States v. Corey Gardner*
        Criminal No. DKC-21-0272

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Corey Gardner (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **September 29, 2023**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1. The Defendant agrees to plead guilty to Counts Two and Five of the Superseding Indictment, which charge the Defendant with Possession with the Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1). The Defendant admits that he is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

**Counts Two and Five: Possession with the Intent to Distribute a Controlled Substance**

   a. That on or about March 18, 2020, and May 13, 2021, in the District of Maryland, the Defendant knowingly possessed controlled substances; and

   b. That the Defendant possessed with the intent to distribute the controlled substances knowingly.

## Penalties

3.    The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 2, 5 | 21 U.S.C. § 841(a)(1) | N/A | 20 years | 3 years Minimum<br><br>Life Maximum | $1 million | $100 |

    a.    Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b.    Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c.    Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d.    Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e.    Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f.    Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay,

and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.  The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.  If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.  If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.  The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.  If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be

*United States v. Corey Gardner*
September 28, 2023
Page 4

admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

  6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

    a. **Count 2**: This Office and the Defendant agree that the applicable base offense level is **12** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(14) because the offense involved less than 4 grams of fentanyl.

    b. **Count 5**: This Office and the Defendant further agree that the applicable base offense level is **12** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(14) because the offense involved less than 50 grams of cocaine. The parties stipulate and agree that the offense level is increased by two levels, pursuant to U.S.S.G. § 2D1.1(b)(1), because a firearm was possessed. The adjusted offense level for Count 5 is **14**.

        c.        The parties stipulate and agree that Counts 2 and 5 group, pursuant to U.S.S.G. § 3D1.1-2. Pursuant to U.S.S.G. § 3D1.3, the highest offense level of Counts 2 and 5 is 14 and, therefore, the adjusted offense level is **14**.

        d.        The parties stipulate and agree to an upward departure of eighteen levels, pursuant to U.S.S.G. § 5K2.21, due to dismissed conduct (specifically, the dismissal of two counts under 18 U.S.C. § 922(g)(1) that implicate Armed Career Criminal status under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (Counts One and Four), and the dismissal of two counts under 18 U.S.C. § 924(c) (Counts Three and Six)). After the upward departure, the adjusted offense level is **32**.

        e.        A Pre-plea Criminal History Report was completed on January 13, 2023. The Pre-plea Criminal History report reflects that the Defendant is a Career Offender pursuant to U.S.S.G. § 4B1.1(a) due to multiple prior controlled substance offense convictions. Therefore, the parties stipulate and agree that the Defendant is a Career Offender, resulting in an offense level of **32,** pursuant to U.S.S.G. § 4B1.1(b)(3).

        f.        This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

        g.        Based on the foregoing, the parties stipulate and agree that the final offense level is **29**. Based upon the Pre-plea Criminal History Report dated January 13, 2023, the parties stipulate and agree that the Defendant's criminal history level is VI. An offense level of 29 and a criminal history category VI results in an advisory guidelines range of 151-188 months. The Defendant agrees that he will not raise any argument that any specific prior conviction is not a predicate for a career offender designation under U.S.S.G. § 4B1.1.

        7.        Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

<u>Rule 11 (c) (1) (C) Plea</u>

        8.        The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **144 months' imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case, taking into consideration the nature and circumstances

of the offense, the Defendant's criminal history, and all the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. If the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

### Obligations of the Parties

9. At the time of sentencing, this Office shall recommend a sentence of **144 months' imprisonment**. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

i. The Defendant reserves the right to appeal the sentence of imprisonment if the total term of imprisonment exceeds 144 months; and

ii. This Office reserves the right to appeal the sentence of imprisonment if the total term of imprisonment is less than 144 months.

    c.  The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

    11.  The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

    12.  Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: one Sig Sauer P250 .45 caliber handgun bearing serial number EAK091010 and 9 .45 Auto rounds of ammunition; one Taurus PT 111 9-millimeter caliber handgun bearing serial number TKZ36160 and 18 9mm rounds of ammunition; one Beretta APX 9-millimeter caliber handgun, bearing serial number A063669X and 13 9mm Luger ammunition; and $54,209 in U.S. currency.

    13.  The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

    14.  The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

    15.  The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

    16.  Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal,

state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

18.    The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw the plea. If the Defendant persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, the Defendant's attorney, nor the Court can make a binding prediction or promise that the Court will accept this Agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

19.    This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

        Very truly yours,

        Erek L. Barron
        United States Attorney

        John W. Sippel Jr.
        Calvin C. Miner
        Assistant United States Attorneys

        I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9/29/2023
Date

Corey Gardner

        I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

9/29/2023
Date

Howard Cardin, Esquire

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

In the morning hours of March 18, 2020, a Baltimore Police Department detective was conducting covert surveillance from an unmarked vehicle in the 1800 block of Eagle Street in Baltimore City, Maryland. The detective observed the Defendant, Corey Gardner ("Gardner"), selling what appeared to be narcotics to a female. At one point, Gardner walked away towards South Payson Street and returned with a softball-sized black bag which the detective believed contained narcotics. The detective then notified an arrest team to arrest Gardner.

Baltimore Police Department detectives quickly arrested Gardner. Following his arrest, Gardner was searched and detectives recovered nearly $800 of U.S. currency in various denominations, four mobile devices, and a Lexus key fob from Gardner. The detectives then searched for Gardner's vehicle, which they believed was parked nearby.

One of the Baltimore Police Department detectives walked in the direction of South Payson Street, clicking buttons on the key fob to identify Gardner's vehicle. The detective quickly located a 2008 Lexus vehicle, that was registered to Gardner, parked in the 600 block of South Payson Street. Detectives then called for a K-9 unit. The K-9 unit arrived and a scan of Gardner's vehicle was completed. During the scan, the K-9 alerted to the presence of narcotics on the driver's side door of Gardner's vehicle.

The detectives searched the Lexus and recovered a loaded Sig Sauer P250 .45 caliber handgun with nine rounds of ammunition in the driver's side door compartment. A small amount of narcotics was also located in the vehicle. Furthermore, detectives discovered the black bag Gardner possessed on the ground in the alley, where he was conducting narcotics transactions, and recovered 48 capsules of what was tested and later found to be fentanyl a Schedule I controlled substance. Gardner was charged and was later released on home detention.

A year later, in May 2021, the Howard County Police Department received information that Gardner, on home detention as a result of charges related to the incident discussed above, was trafficking narcotics and living in the Mission Place Apartments in Howard County, Maryland. After learning this information, on May 13, 2021, Howard County Police Department detectives and officers conducted surveillance in the area surrounding the Mission Place Apartment complex. During the surveillance, detectives and officers observed Gardner commit a traffic infractions. The detectives and officers notified patrol officers who conducted a traffic stop of Gardner at a

nearby gas station. The officers requested a K-9 unit, which arrived at the location a few minutes after Gardner was stopped. The K-9 scanned the car and alerted to the presence of narcotics on the driver's side door.

Officers searched the car and recovered a loaded a Taurus PT 111 9-millimeter caliber handgun with 19 rounds of ammunition. Officers also recovered 100 plastic containers of what was tested and found to be cocaine from inside the car.

Later that evening, officers obtained and executed a search warrant at Gardner's unoccupied apartment. The officers recovered another loaded firearm - a Beretta APX 9-millimeter caliber handgun - inside a couch drawer; 25 vials of cocaine in the center console of the couch; and $54,209 in cash inside of a black safe.

Gardner stipulates and agrees that on March 18, 2020, and May 13, 2021, he possessed the narcotics with the intent to distribute them.

SO STIPULATED:

_____
John W. Sippel Jr.
Calvin C. Miner
Assistant United States Attorneys

_____
Corey Gardner
Defendant

_____
Howard Cardin, Esquire
Counsel for Defendant